HARDY, Judge.
This is a suit on open account in which plaintiff claimed the principal sum of $862.63, which amount was increased by the representation of a supplemental and amended petition to the sum of $1,193.08. In answer, defendant denied his obligations as to the major portion of plaintiff’s claim, and, assuming the position of plaintiff in reconvention, prayed for judgment against plaintiff in the sum of $9,878.57. After trial there was judgment in favor of plaintiff in the principal sum of $1,193.10, and further judgment rejecting the reconven-tional demands of defendant, from which he has appealed.
Plaintiff is a co-op association, hereinafter referred to as “Elevator”, engaged in the drying and storing of grain. By agreement between the parties the defendant’s entire rice crop for the 1960-61 season was delivered to the Elevator, where it was dried, portions being stored for a period of time and the balance delivered, allegedly in accordance with defendant’s instructions. The total charges of the account against defendant for the' services rendered by plaintiff amounted to $9,578.41, against which specified credits had been applied in the sum of $8,385.31, leaving the balance due by defendant, which is the basis of plaintiff’s claim, in the amount of $1,193.10. At this point it is worthy to call attention to the discrepancies — although only here concerned with a matter of one or two cents — in the amount of the claim, the reconciliation of debits and credits and the amount of the judgment. We make this observation because, in attempting to follow the much more complex calculations concerning numbers of bushels, barrels, prices, etc., we note that the testimony of the witnesses, including the parties themselves, is consistently subject to inexplicable discrepancies. Inasmuch as the variations are inconsiderable, we will disregard them for the purposes of this opinion.
The charges made against defendant were established without dispute on trial with the exception of a charge for hauling in the amount of $179.10. This, charge was incurred when Cade Export Company of Alexandria, which had purchased some 25,000 bushels of defendant’s crop, subject to delivery as and when dried, rejected a particular lot of rice on the ground that it was infested with red rice and, therefore, unacceptable. As the result of this rejection, Cade deducted the hauling charges incurred from its account with the Elevator. Defendant contends that it was understood that all of his crop was to be delivered to purchasers, f. o. b. at the Elevator, and, consequently, he is not liable for any hauling charges. It is mere superfluity to observe that, under such circumstances, the Elevator would not be liable for such charges. Inasmuch as the record supports the conclusion that this particular lot of rice was a part of the Hardey crop, its rejection by the consigned purchaser and the responsibility incurred with respect to the hauling charges to and from the Elevator would appear to be a matter for adjustment or settlement between defendant and the purchaser who rejected the delivery. Certainly, the Elevator should not be penalized, since, in any event, it had no responsibility for hauling charges.
We have found no difficulty in reaching the conclusion that plaintiff has abundantly established its claim for charges incurred by t^e defendant in the sum of $1,193.10.
Proceeding to a consideration of the major issue, which involves defendant’s re-conventional claim, we note that an itemization thereof involves (1) the loss of fifty cents per bushel on 3873.09 bushels of registered seed rice, which defendant alleged was mistakenly delivered by the Elevator instead of certified rice, causing a loss of $1,936.54; (2) the value of 339.49 bushels of registered seed rice, negligently lost or misplaced by the Elevator, valued at $2.86 per bushel and amounting to $970.94; and (3) the value of 3,050.03 bushels of certified seed rice, lost or misplaced through the alleged negligence *574 of the Elevator, valued at $2.36 per bushel, amounting to $7,198.07.
The aggregate of the above claims amounts to $10,105.55, against which, in his pleading, defendant admitted plaintiff’s claim to the extent of $226.98, leaving the balance claimed by way of reconvention in the sum of $9,878.57.
The following material facts are well established by the record before us. The Elevator received from defendant’s rice crop 45,446.05 bushels of green certified rice and 7,791.72 bushels of green registered rice, all of which was to be dried and delivered, or stored for future delivery. There is a distinction between certified and registered rice which involved a higher value for the latter of approximately fifty cents per bushel. After drying defendant’s rice, the Elevator accounted for a total dry weight of 41,276.55 bushels of certified rice and 7,066.84 bushels of registered rice, showing a difference of 4,169.48 bushels between the green and dried certified rice and a difference of 724.99 bushels between the green and dried registered rice.
It is to be noted that defendant’s claims, as asserted in his pleading, are founded upon the alleged negligence of plaintiff, principally consisting of loss or misplacement. We are in complete agreement with the conclusion of the district judge, as stated in his written reasons for judgment, that this record completely fails to establish any negligence by the Elevator resulting in loss or misplacement of any portion of defendant’s crop.
Reduced to the simplest possible statement, defendant’s claims under items (2) and (3) above noted, rest upon his contention that the loss of weight between the green rice received by the Elevator and the dried rice accounted for is too great. It is clear from defendant’s testimony that he predicates his demands in these respects primarily upon the ground that it was his understanding that his crop was to be dried to a 12% moisture content, and he contends that if this result had been effected he would have been entitled to a substantial increase in the number of dry bushels of rice.
In the final analysis, therefore, defendant’s rights must be determined upon the basis of fact as to whether the difference between the green bushels received and dried bushels delivered, as represented by plaintiff, is disproportionate and excessive.
The manager of plaintiff’s Elevator testified that the computation of green bushels received and dried bushels shipped was based upon the actual weight. As defendant’s crop was received by the Elevator it was weighed and identified by lot numbers and when shipped out the same lot numbers were retained and the dried weight was established. The difference between green and dry weight was then checked against what this witness identified as the Arkansas Rice 'Growers’ Formula for ascertaining dry weights. Comparison of plaintiff’s calculation with the application of the formula disclosed a difference between formula and actual weight of only 1.302%, which the witness testified was within a reasonable limit of tolerance. There is no testimony in the record which controverts this conclusion.
In the effort to support his claims, plaintiff tendered as an expert witness Mr. Austin T. Harrell, an Associate Professor of Agronomy, with the Louisiana State University Experiment Station Service. This witness testified that a formula for the determination of the amount of moisture removed from rice in the drying process had been worked out by “agricultural engineers.” The only thing approaching definite testimony with reference to the problem under consideration is found in the following testimony:
“Q. Was the * * * this formula produced more dry rice than the Arkansas Rice Growers formula?
“A. It’s my recollection that it did.
“Q. And approximately how many bushels ?
*575 “A. I don’t remember off-hand, but I think it was fairly close but this formula produced a little more.
“Q. That formula produced' — just to refresh your memory * * * 290 bushels, is that the figure?
“A. That’s approximately the figure.
“Q. You have seen those computations ?
“A. Yes, I have seen them.”
However, it was clear that this witness was basing his testimony and the application of his formula upon the reduction of moisture content to exactly 12%, as is evidenced by his testimony on cross-examination, as follows:
“Q. This formula that you used, did it presume a reduction in moisture to 12% exactly?
“A. Well, the formula there * * * you decide the moisture you are going to dry to * * * you presume the moisture that you want and then you calculate the moisture that will be removed. You presume * * * or assume the moisture that you want, and then you take the moisture that the product is,' and you can determine the amount of moisture that will be removed in the process.
“Q. Then, I think * * * this is what I’m’ getting at * * * let me ask you if this is correct: That the only way to determine dry weight exactly as related to green weight is to take your green weight before it goes through the dryer and then measure your rice after it comes out of the dryer to ascertain what the dry weight is. Is that the only way you can do it with exactness and know exactly what you have, is that right?
“A. Generally, I think that would be fairly correct.”
Although defendant contended that he had an agreement with the Elevator to reduce his rice to a moisture content of 12%, we think he signally failed to establish this fact on trial of the case by anything approaching a preponderance of the evidence. It follows that the testimony of this expert witness cannot be given serious consideration. It is also pertinent to observe that the record is devoid of any evidence with respect to the superiority of one of the formulas over the other and contains no real support of defendant’s position on these claims which, at best, rested upon a purely speculative basis.
Adverting to defendant’s demand as set forth in (1) supra, we find this claim results from his contention that the Elevator, through negligence, delivered a certain load of registered rice instead of certified rice to the Cade Export Company at Alexandria. The testimony of the manager of the Elevator was that, shortly after this rice was loaded on trucks for delivery to Cade, he discovered that an error had been made in the lot number and immediately called the Cade Company and directed the employee to whom he spoke, presumably the warehouseman, to correct the lot number. This witness also testified that he was authorized by the defendant to deliver the registered rice instead of certified rice, the explanation being that defendant’ was obligated to deliver a substantial amount of his crop to Cade at the earliest possible time and there was not sufficient dried certified rice on hand for delivery. This testimony was squarely and positively denied by the defendant. However, some light is thrown on this situation by Mr. Cade, who testified that the registered rice was received and co-mingled with certified rice for export; that he talked to defendant about the matter and subsequently that they came to an agreement, as the result of which he paid defendant a 25^ premium on this lot of rice. The explanation of the witness was that, under the circumstances, he was willing to assume the loss of half of the difference in value of fifty cents per bushel between *576 registered and certified rice if defendant would assume an equal loss. Defendant accepted this offer and the incident was settled between him and Cade. There was some indication that defendant proposed to make a claim against the Elevator for the difference of fifty cents per bushel, and, if he recovered, that he would reimburse Cade to the extent of the twenty-five cents premium he had allowed.
Confronted with a case in which one of the parties testifies “yes” and the other party testifies “no”, where there is no reflection upon the credibility of either, and where the surrounding circumstances fail to weight the scale in favor of one and against the other, a court has no alternative except to reject the demands of the party upon whom rests the burden for their establishment. It follows that defendant’s claim on this item must be rejected on the ground of failure to establish the same by the requisite preponderance of evidence.
For the reasons assigned, the judgment appealed from is affirmed at appellant’s cost.