YARRUT, Judge.
This is an appeal from a judgment of the District Court, after a trial on the merits, dismissing Plaintiff’s suit to recover (in solido) from Defendants $55,000.00 for personal injuries sustained, and medical expenses incurred, by Plaintiff resulting from a collision between an automobile driven by Defendant (Mrs. Láveme R. Fiorella), and a bicycle on which Plaintiff was riding at the time. Mrs. Fiorella’s co-defendant is her public liability insurer. Reference to “Defendant” regarding the accident will be to Mrs. Fiorella alone.
The accident occurred on March 21, 1963 in broad daylight about 2:00 o’clock in the afternoon at the intersection of Nashville Avenue and York Street, in the City of New Orleans. Defendant was driving on Nashville Avenue towards the River in the left lane next to the narrow, elevated grass-covered neutral ground that divides Nashville Avenue’s opposing traffic roadways, consisting of three lanes each.
Plaintiff testified he left his place of work ■on Pine Street, a few blocks from Nashville, for his home on Valence Street on the downtown or other side of Nashville. As he entered Nashville, he looked to his left, or towards Fontainebleau Drive, a few blocks away and, seeing no automobiles ■coming, proceeded to cross the uptown side .of Nashville to the neutral ground, where he proceeded on Nashville towards the river for almost a block when he was struck in the rear by Defendant, a few feet from the neutral ground.
Defendant testified she turned right from Fontainebleau and proceeded down Nashville towards the River, remaining in the lane nearest the neutral ground throughout ; that, as she approached the intersection of York and Nashville, she looked only to her left for a brief moment for vehicles that might be approaching on York, as York ends at Nashville forming a T intersection; for which reason she saw no need to look to her right at York for intersecting traffic. Prior to reaching the York intersection, and glancing to the left, Defendant saw no one in the Nashville lane nearest the neutral ground. As she was about to enter the intersection, she noticed something to her right, which had not yet crossed her path but was about to do so. Before she could do anything, a bicycle suddenly crossed into the path of her automobile and struck it on the right front side.
Plaintiff and Defendant were the only witnesses to the accident. The only physical evidence offered was Plaintiff’s bicycle with its front wheel fender dented and its rear wheel and fender more seriously damaged, indicating that Defendant’s automobile did hit the bicycle on the left side as it turned into Defendant’s left lane. The District Judge did not give written reasons for his judgment in favor of Defendants, but we must conclude that he was either not impressed with Plaintiff’s testimony, or found that Plaintiff had not borne the burden of proof.
Plaintiff is 93 years old, and was returning home from work as a brick mason from a point on Pine Street where he had been employed for three days. He was permitted to prosecute his suit in forma pauperis, yet under cross-examination admitted earning about $600 per month for many months before the accident; and that he had other paying business interests. Notwithstanding his admission of earnings that subjected him to federal income tax, when asked if he had made any income tax returns, he answered that after age 72 he was not required to pay such tax. This, of course, is not correct.
*255 Plaintiff’s pertinent testimony under cross-examination is:
“Q At the time of the accident, were you going straight, were you getting ready to turn at York, or what?
“A No — I don’t know what happened at York. I know I was on that lane going toward York. I don’t know what made her pick me up or nothing — what I mean, made her hit me.
“Q You don’t remember whether or not you were turning at York at that time, or going straight?
“A No, I don’t know, but I was going to make a left turn — that’s what I had done two days ahead of that.
“Q But you don’t know whether on day you were in the process of making a lefthand turn there, do you?
“A No.
“Q Somewhere between there and York?
“A I don’t know.
“Q Sam, on direct examination— that’s when Mr. Casano was questioning you — you stated that when you got to York, you didn’t put out your hand to signal a left-hand turn this time.
“A No, I never told him that. I told him that I didn’t know if I put out my hand, because I don’t remember any cars coming anywhere in there. I didn’t see any cars, but I don’t know whether or not I put my hand out for a signal or not. I know I did do that every time I turned the other two days there, but this was the third day, and I don’t know whether I did then.
“Q Well, you don’t remember then, whether or not you made any type of signal on the date of the accident there; is that right?
“A That’s right. I know I always make some type of signal when 1 get to there, but I didn’t see any cars so I can’t say for sure whether I did then or not.
t- * * * =t- *
“Q And you say you got hit before you got to the intersection?
“A I suppose so, I don’t know, I don’t remember getting to the intersection at all.
“Q Maybe you did get hit at the intersection, though, you’re not sure?
“A I don’t remember getting in the intersection at all, I woke up ten days later.
“Q As a matter of fact you don’t remember too much about this accident, do you?
“A I don’t know anything about the accident, I know leading up to it, I don’t know anything about the accident at all.
"Q Now, when you made your turn to Nashville did you make any sort of signal?
“A No, I just come right across, broad open daylight, you can see everything, I went on across, I’m going to make a left.
“Q Do you remember anything after you got hit?
“A No, I didn’t remember anything after I got hit, ten days later.
“Q You don’t remember where you landed or—
“A No, I don’t know anything about that, period, no sir.
*256 “Q You don’t remember what part of your bike got hit, do you?
“A No more than what I see.
“Q Well, you’re looking at this bicycle here in court, you don’t know where it got hit?
“A I don’t know.”
And when cross-examined as to whether he had previously discussed the case before testifying, even with his lawyer, he testified:
“Q No, I am talking about any time, Sam. Did you discuss the facts of this case with your attorney at any time?
“A He come to the house there, but I didn’t talk to him much about it. My wife was showing him some papers — one thing and another.
“Q So you have never discussed all the facts about this accident with anybody before today, is that you testimony ?
"A That’s right. I ain’t never discussed it.
J‘Q And you are positive, Sam, that you did not make a left turn across a moving lane of traffic at York?
'“A No, I don’t know nothing about what I done at York, but I know that somewhere within the block of York and the intersection of York, or about at the intersection of York — you see, York don’t cross there, but somewhere along there — I don’t remember just where — but I crossed over to the neutral ground.”
Defendant testified she was stunned by the accident and could only relate that Plaintiff approached from her right and, suddenly without notice or warning, turned left across her lane for a turn into York Street. She remembers nothing else but the collision.
From the testimony of Plaintiff and Defendant, the only witnesses to the accident, and the physical evidence showing where the bicycle was struck, we must conclude that the judgment of the District Court is correct.
Emmons v. Bertucci, La.App., 163 So.2d 814; East Carroll Grain Co-Op Ass’n v. Hardey, La.App., 152 So.2d 572; Peters v. Great Atlantic & Pacific Tea Co., La.App., 72 So.2d 562; Winford v. Wilson, La.App. 59 So.2d 498.
The judgment of the District Court is affirmed, Plaintiff to pay all taxable costs in both courts.
Affirmed.